Clerk's Office
Filed Date:  3/7/22

U.S. DISTRICT
COURT
EASTERN DISTRICT
OF NEW YORK
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*<br>JAMES WATKINS, M.D.,<br>ABINO ORTEGA, R.N.,<br>ROBERT SMITH, D.PM., M.Sc., R.Ph., | Civil Action No.<br>17-cv-4319<br><br>(Ross, J.) |

                                        Plaintiffs,

                    - against -

CHS MIDDLE EAST, LLC,

                                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


| | |
|---|---|
| UNITED STATES *ex rel.*<br>M. SHAWN LAWLER, DDS, | |
| | Civil Action No.<br>20-CV-698 |

                                        Plaintiffs,

                    - against -                         (Brodie, Ch. J.)

COMPREHENSIVE HEALTH SERVICES, INC.,
COMPREHENSIVE HEALTH SERVICES, LLC,
COMPREHENSIVE HEALTH SERVICES
INTERNATIONAL, LLC,
CHS MIDDLE EAST, LLC,
CALIBURN INTERNATIONAL CORPORATION, and
SALLYPORT GLOBAL SERVICES LTD.,

                                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the United States Department of State and the United States Air Force (collectively the "United States"); Comprehensive Health Services, Inc.; Comprehensive Health Services, LLC; Comprehensive Health Services International, LLC; CHS Middle East, LLC; and Caliburn International, LLC (collectively the "Defendants"); James Watkins, Abino Ortega, Robert Smith, and M. Shawn Lawler (collectively the "Relators") (hereafter the United States, Defendants, and Relators are collectively referred to as "the Parties"), through their authorized representatives.

<u>RECITALS</u>

A.     Comprehensive Health Services, LLC ("CHS"), is a provider of medical solutions, including global medical services, and is headquartered in Cape Canaveral, Florida. The company was originally incorporated in Maryland as Comprehensive Health Services, Inc., and in 2018 was re-organized in Delaware. Comprehensive Health Services International, LLC, also headquartered in Cape Canaveral, FL, is a wholly-owned direct subsidiary of Comprehensive Health Services, LLC, organized in Delaware, and the direct parent of CHS Middle East, LLC. CHS Middle East, LLC, a provider of global medical services, is a wholly-owned direct subsidiary of Comprehensive Health Services International, LLC, and the contracting party for the MSSI contract and the ALiSS and Balad subcontracts, as defined in subparagraphs C(1)–(3). Caliburn International, LLC, ("Caliburn") CHS's parent company, organized in Delaware, is a provider of professional services and specialized technology solutions for government and commercial clients and is headquartered in Reston, VA. Caliburn is owned by Caliburn Holdings, LLC, a Delaware

2

company headquartered in Reston, VA. On September 30, 2021, Caliburn International changed its name to Acuity International.

B.      The below civil actions were filed pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Civil Actions"):

- On July 21, 2017, James Watkins, Abino Ortega, and Robert Smith filed a *qui tam* action in the United States District Court for the Eastern District of New York captioned *United States ex rel. James Watkins, M.D.; Abino Ortega, R.N.; and Robert Smith, D.P.M. M.Sc. R.P.H., v. CHS Middle East, LLC*, CV-17-4319.

- On May 10, 2019, M. Shawn Lawler filed a *qui tam* action in the United States District Court for the Middle District of Florida, which was transferred to the United States District Court for the Eastern District of New York on February 5, 2020, captioned *United States ex rel. Lawler v. Comprehensive Health Services, Inc. et al.*, CV 20-0698.

Relators in the Civil Actions allege, among other things, that Defendants had obligations under contracts and subcontracts with the United States Department of State and the United States Air Force to operate medical facilities in Iraq at the United States Embassy in Baghdad, the United States Consulate in Basrah, and the air base at Balad, consistent with United States standards and that Defendants received payment for doing so even though they failed to meet these standards by, among other things, failing to maintain appropriate staffing levels; allowing unqualified employees to perform surgery, pharmacy, and radiology services; failing to adequately secure medical records in HIPAA-compliant electronic medical records systems; failing to disclose known HIPAA breaches; knowingly importing non-approved controlled substances into Iraq from South Africa; and bidding on

the contracts knowing that they could not meet the obligations. The United States intends to partially intervene in the Civil Actions.

C.    The United States contends that it has certain civil claims against Defendants for the following conduct (the "Covered Conduct"):

1. Between 2011 and 2021, CHS submitted proposals for, and was awarded, an initial contract (Contract No. SAQMMA11D0073) and series of contract extensions with the Department of State ("DoS") to provide medical support services at the DoS facilities in Iraq ("MSSI Contract"). The total value of the initial contract and extensions was over $577 million. The period of performance under the MSSI Contract ran until September 2021.

2. Between 2015 and 2021, CHS was a subcontractor on two Department of State prime contracts to provide medical support services at DoS facilities in Afghanistan (the "ALiSS Subcontracts"). The first subcontract was issued under a prime contract valued at $40 million between GDSS and the Department of State (Contract No. SAQMMA14D0152). In 2017, the vendor DynCorp was substituted for GDSS and CHS remained as a subcontractor. The second ALiSS subcontract was issued under prime Contract No. SAQMMA-14-D-0151, and ran, with extensions, from April 2017 through September 15, 2021, with a total value of over $34 million. The total value of the ALiSS Subcontracts was over $78 million.

3. Between 2014 and the present, the United States Air Force ("Air Force") awarded Sallyport Global Holdings, Inc. contracts for Balad Base

4

Operations, Base Life Support and Security Services in Iraq (the "BBS Contracts," also known as Contract Nos. FA8615-14-C-6020, FA8630-18-C-5003 and FA8630-19-C-5004) for a total value of approximately $1.9 billion. As part of the BBS Contracts, Sallyport Global Holdings, Inc. subcontracted medical services to CHS Middle East, LLC and Comprehensive Health Services, Inc. (the "Balad Subcontracts") with a total value of over $111 million.

4. The MSSI Contract and the ALiSS Subcontracts required CHS to provide medical supplies, including controlled substances, that were U.S. Food and Drug Administration ("FDA") or European Medicines Agency ("EMA") approved and were manufactured according to federal quality standards. Up until May 1, 2021, the Balad Subcontracts required the supply and storage of medication to be in line with EU/USA standards.

5. The MSSI Contract required CHS to provide a secure electronic medical record system ("EMR") to store all patients' medical records, including the confidential identifying information of U.S. servicemembers, diplomats, officials, and contractors working and receiving medical care in Iraq.

6. The United States contends that CHS knowingly, recklessly, or with deliberate ignorance, submitted or caused others to submit false claims under the MSSI Contract, the ALiSS Subcontracts, and the Balad Subcontracts, and that it has certain civil claims against CHS for that conduct, as described further below:

a. Between 2012 and 2019, CHS knowingly, recklessly, or with deliberate ignorance, submitted or caused to be submitted claims to DoS for reimbursement under the MSSI Contract that failed to disclose that CHS had not complied with the terms of the contract requiring CHS to store all patients' medical records on a secure EMR. DoS paid CHS for that EMR under the MSSI Contract.

b. More specifically, CHS submitted or caused to be submitted, and DoS paid CHS for, claims that included costs of storing medical records on an EMR. In truth, CHS did not consistently comply with the MSSI Contract's requirements regarding the storage of medical records, but nonetheless billed DoS $485,866 for the EMR.

c. When CHS staff scanned medical records for the EMR, CHS staff saved and left scanned copies of some of the records on an internal network drive, which non-clinical staff could have accessed.

d. Even after staff raised concerns about the privacy of protected medical information, CHS did not take adequate steps to store the information exclusively on the EMR.

e. DoS paid CHS $485,866 for its claims related to construction of an EMR and for storage of medical records on an EMR. CHS's claims failed to disclose that CHS had also stored some medical records on an internal network drive, which non-clinical staff could have accessed, in violation of the MSSI Contract.

7.  The United States contends that, between 2012 and 2019, CHS knowingly, recklessly, or with deliberate ignorance, submitted or caused others to submit, false claims to DoS under the MSSI Contract and the ALiSS Subcontracts, and to the Air Force under the Balad Subcontracts with respect to controlled substances by representing that the substances were FDA- or EMA-approved. More specifically:

   a.  CHS lacked a DEA license necessary for exporting controlled substances from the United States to Iraq.

   b.  CHS obtained controlled substances by using an arrangement in which CHS physicians based in Florida sent letters requesting that a South African physician prescribe the controlled substances. A South African shipping company then received the controlled substances and sent them to CHS in Iraq with a prescription to the requesting Florida-based CHS physician. The controlled substances obtained by the South African supplier were not FDA- or EMA-approved. CHS used these controlled substances for patients under the MSSI Contract, the ALiSS Subcontracts and the Balad Subcontracts, and obtained reimbursement for them from the United States.

   c.  CHS's process for procuring controlled substances did not include personnel with the requisite expertise in ensuring that the controlled substances would meet the FDA and EMA contract and regulatory requirements. Rather, CHS vested responsibility with a

> procurement manager who had no medical, legal, or pharmacological training.

> d.  When asked by DoS if the drugs procured under the MSSI contract were FDA- or EMA-approved as required by the contract, CHS stated that they were.

> e.  The United States paid CHS $141,829 for claims CHS submitted or caused to be submitted that failed to disclose that the controlled substances were not FDA- or EMA-approved, in violation of the MSSI Contract, the ALiSS Subcontracts and the Balad Subcontracts.

D.     This Settlement Agreement is neither an admission of liability by Defendants nor a concession by the United States that its claims are not well founded.

E.     Relators claim entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relators' reasonable expenses, attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

<u>TERMS AND CONDITIONS</u>

1.     Defendants shall pay to the United States $930,000.00 (the "Settlement Amount"), and interest on the Settlement Amount at a rate of 1% simple interest per annum from July 7, 2021, of which $474,018.25 is restitution, by electronic funds transfer pursuant to written instructions to be provided by the Office of the United States Attorney for the

Eastern District of New York no later than fifteen days after the Effective Date of this Agreement.

2.      Conditioned upon the United States receiving the Settlement Amount and as soon as feasible after receipt, the United States shall pay to Relators by electronic funds transfer the following sums (the "Relators' Shares"), pursuant to written instructions to be provided by each Relator or his counsel:

a.      To Dr. James Watkins, $15,000;

b.      To Dr. Robert Smith, $15,000;

c.      To Abino Ortega, $15,000;

d.      To Dr. M. Shawn Lawler, $127,050.

3.      Defendants shall pay to counsel for Relators Watkins, Ortega and Smith $325,000.00 for expenses, and attorneys' fees and costs by electronic funds transfer pursuant to written instructions to be provided by Andrew St. Laurent, Esq. and Gary L. Azorsky, Esq., no later than fifteen days after the Effective Date of this Agreement; and Defendants shall pay to counsel for Relator Lawler $206,691.00 for expenses, and attorneys' fees and costs by electronic funds transfer pursuant to written instructions to be provided by Joshua Russ at Reese Marketos LLP no later than fifteen days after the Effective Date of this Agreement.

4.      Subject to the exceptions in Paragraph 6 (concerning reserved claims) below, and upon the United States' receipt of the Settlement Amount, plus interest due under Paragraph 1, the United States releases Defendants together with their current and former parent companies; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former corporate owners; and the company successors and assigns of

any of them from any civil or administrative monetary claim the United States has for the

Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Program Fraud

Civil Remedies Act, 31 U.S.C. §§ 3801-3812; the Contract Disputes Act, 41 U.S.C. § 7101

*et seq.*, or the common law theories of breach of contract, payment by mistake, unjust

enrichment, and fraud.

5.      Subject to the exceptions in Paragraph 6 below, and upon the United States'

receipt of the Settlement Amount plus interest due under Paragraph 1, Relators, for

themselves and for their, successors, attorneys, agents, and assigns, release Defendants

together with their current and former parent companies; direct and indirect subsidiaries;

brother or sister corporations; divisions; current or former corporate owners; and the

company successors and assigns of any of them and their officers, agents, and employees,

from any civil monetary claims the Relators have on behalf of the United States for the

Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

6.      Notwithstanding the releases given in Paragraphs 4 and 5 of this Agreement,

or any other term of this Agreement, the following claims and rights of the United States

are specifically reserved and are not released:

   a.      Any liability arising under Title 26, U.S. Code (Internal Revenue

    Code);

   b.      Any criminal liability;

   c.      Except as explicitly stated in the Agreement, any administrative

    liability or enforcement right, including the suspension and

    debarment rights of any federal agency;

d.      Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e.      Any liability based upon obligations created by this Agreement;

f.      Any liability of individuals;

g.      Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

7.      Relators and their heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relators' receipt of the Relators' Shares, Relators and their heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Actions or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Actions.

8.      Relators, for themselves, and for their heirs, successors, attorneys, agents, and assigns, release Defendants, together with their current and former parent companies; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former corporate owners; and the company successors and assigns of any of them, and their officers, agents, and employees, from any liability to Relators arising from the filing of the Civil Actions under 31 U.S.C. § 3730(d) for expenses or attorneys' fees and costs, or, with respect to Relators Watkins, Ortega and Smith, 31 U.S.C. § 3730(h).

9.      Defendants waive and shall not assert any defenses Defendants may have to any criminal prosecution or administrative action relating to the Covered Conduct that

11

may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

10.     Defendants fully and finally release the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct or the United States' investigation or prosecution thereof.

11.     Defendants fully and finally release the Relators from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the Relators, related to the Civil Actions and the Relators' investigation and prosecution thereof.

12.     a.     Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of Defendants, and their present or former officers, directors, employees, shareholders, and agents in connection with:

      (1)     the matters covered by this Agreement;

      (2)     the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3)  Defendants' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

(4)  the negotiation and performance of this Agreement;

(5)  the payment Defendants make to the United States pursuant to this Agreement and any payments that Defendants may make to Relators, including costs and attorneys' fees,

are unallowable costs for government contracting purposes (hereinafter referred to as "Unallowable Costs").

b.  Future Treatment of Unallowable Costs: Unallowable Costs will be separately determined and accounted for by Defendants, and Defendants shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

c.  Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days of the Effective Date of this Agreement, Defendants shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by Defendants or any of their subsidiaries or affiliates from the United States. Defendants agree that the United States, at a minimum, shall be entitled to recoup from Defendants any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment. The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine Defendants' books and records and to disagree with any calculations submitted by Defendants or any of their

subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by Defendants, or the effect of any such Unallowable Costs on the amount of such payments.

13.     Defendants agree to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement. Upon reasonable notice, Defendants shall encourage, and agree not to impair, the cooperation of their directors, officers, and employees, and shall use their best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Defendants further agree to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in their possession, custody, or control concerning any investigation of the Covered Conduct that Defendants undertake, or that has been performed by another on their behalf.

14.     This Agreement is intended to be for the benefit of the Parties only.

15.     Upon receipt of the payment described in Paragraph 1 above, the United States and the Relators shall promptly sign and file in the Civil Actions a Joint Stipulation of Dismissal of each respective Civil Action pursuant to Federal Rule of Civil Procedure 41(a)(1). The Joint Stipulations of Dismissal filed in the Civil Actions shall provide for the dismissal with prejudice as to the Relators.

16.     Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

17.     This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States

District Court for the Eastern District of New York. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

18.     This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

19.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

20.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

21.     This Agreement is binding on Defendants' successors, transferees, heirs, and assigns.

22.     This Agreement is binding on Relators' successors, transferees, heirs, and assigns.

23.     All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

24.     Defendants agree not to take any action nor to make or permit to be made any public statement indicating that the Settlement Agreement is without factual basis. Nothing in this Paragraph affects Defendants' testimonial obligations or rights to take positions in litigation to which the United States is not a party.

25.     This Agreement is effective on the date of signature of the last signatory to the Agreement ("Effective Date of this Agreement"). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

DATED: 2/25/22

BREON PEACE
United States Attorney
Eastern District of New York
*Counsel for United States of America*
271-A Cadman Plaza East, 7th Fl.
Brooklyn, New York 11201

By: _____

Christopher D. Volpe
Assistant United States Attorney
(718) 254-6188
christopher.volpe@usdoj.gov


ROGER B. HANDBERG
United States Attorney
Middle District of Florida
*Counsel for United States of America*
400 North Tampa St.
Tampa, Florida 33602

By: _____

Jeremy Bloor
Assistant United States Attorney
(407) 648-7500
jeremy.bloor@usdoj.gov

16

THE UNITED STATES OF AMERICA

DATED: 2/25/22

BREON PEACE
United States Attorney
Eastern District of New York
*Counsel for United States of America*
271-A Cadman Plaza East, 7th Fl.
Brooklyn, New York 11201

By: _____

Christopher D. Volpe
Assistant United States Attorney
(718) 254-6188
christopher.volpe@usdoj.gov

ROGER B. HANDBERG
United States Attorney
Middle District of Florida
*Counsel for United States of America*
400 North Tampa St.
Tampa, Florida 33602

By: _____

Jeremy Bloor
Assistant United States Attorney
(407) 648-7500
jeremy.bloor@usdoj.gov

<u>COMPREHENSIVE HEALTH SERVICES, INC.; COMPREHENSIVE HEALTH</u>
<u>SERVICES, LLC; COMPREHENSIVE HEALTH SERVICES INTERNATIONAL,</u>
<u>LLC; CHS MIDDLE EAST, LLC; AND CALIBURN INTERNATIONAL</u>
<u>CORPORATION - DEFENDANTS</u>

DATED: 2/22/22 BY: _____

COMPREHENSIVE HEALTH SERVICES, INC.
COMPREHENSIVE HEALTH SERVICES, LLC
COMPREHENSIVE HEALTH SERVICES
INTERNATIONAL, LLC
CHS MIDDLE EAST, LLC
CALIBURN INTERNATIONAL CORPORATION

Robert F. Stalick
Printed Name

Chief Executive Officer
Title

DATED: 2-22-2022 BY: _____

William F. Gould
Leila George-Wheeler
HOLLAND & KNIGHT LLP
Counsel for Defendants

17

THE RELATORS

DATED: Feb 18 2022  BY: *James F. Watkins*
                         _____
                         James Watkins


DATED: _____ BY: _____
                         Abino Ortega


DATED: _____ BY: _____
                         Robert Smith


DATED: _____ BY: _____
                         Andrew St. Laurent
                         HARRIS ST. LAURENT & WECHSLER LLP

                         Gary Azorsky
                         COHEN MILSTEIN SELLERS & TOLL PLLC
                         Counsel for Relators Watkins, Ortega, and Smith


DATED: _____ BY: _____
                         M. Shawn Lawler


DATED: _____ BY: _____
                         Rachel V. Rose
                         RACHEL V. ROSE - ATTORNEY AT LAW, PLLC

                         Joshua M. Russ
                         REESE MARKETOS LLP

                         Kevin Darken
                         Counsel for Relator Lawler

18

THE RELATORS

DATED: _____BY: _____
                            James Watkins

DATED: 02/19/22 BY: _____
                            Abino Ortega

DATED: _____BY: _____
                            Robert Smith

DATED: _____BY: _____
                            Andrew St. Laurent
                            HARRIS ST. LAURENT & WECHSLER LLP

                            Gary Azorsky
                            COHEN MILSTEIN SELLERS & TOLL PLLC
                            Counsel for Relators Watkins, Ortega, and Smith

DATED: _____BY: _____
                            M. Shawn Lawler

DATED: _____BY: _____
                            Rachel V. Rose
                            RACHEL V. ROSE - ATTORNEY AT LAW, PLLC

                            Joshua M. Russ
                            REESE MARKETOS LLP

                            Kevin Darken
                            Counsel for Relator Lawler

<u>THE RELATORS</u>

DATED: _____ BY: _____
                              James Watkins


DATED: _____ BY: _____
                              Abino Ortega


DATED: 2|18|22 BY: X _Robert Smith_ (signature) _____
                              Robert Smith


DATED: _____ BY: _____
                              Andrew St. Laurent
                              HARRIS ST. LAURENT & WECHSLER LLP

                              Gary Azorsky
                              COHEN MILSTEIN SELLERS & TOLL PLLC
                              Counsel for Relators Watkins, Ortega, and Smith


DATED: _____ BY: _____
                              M. Shawn Lawler


DATED: _____ BY: _____
                              Rachel V. Rose
                              RACHEL V. ROSE - ATTORNEY AT LAW, PLLC

                              Joshua M. Russ
                              REESE MARKETOS LLP

                              Kevin Darken
                              Counsel for Relator Lawler

18

THE RELATORS

DATED: _____ BY: _____
James Watkins


DATED: _____ BY: _____
Abino Ortega


DATED: _____ BY: _____
Robert Smith


DATED: _____ BY: _____
Andrew St. Laurent
HARRIS ST. LAURENT & WECHSLER LLP

Gary Azorsky
COHEN MILSTEIN SELLERS & TOLL PLLC
Counsel for Relators Watkins, Ortega, and Smith

DATED: 02FEB2022 BY: _____
M. Shawn Lawler

DATED: 2/22/22 BY: _____
Rachel V. Rose
RACHEL V. ROSE - ATTORNEY AT LAW, PLLC

Joshua M. Russ
REESE MARKETOS LLP

Kevin Darken
Counsel for Relator Lawler


18

For Civil Action No. 17-CV-4319:

SO ORDERED this

_____ day of _____, 2022

_____
HONORABLE ALLYNE R. ROSS
United States District Judge, Eastern District of New York

For Civil Action No. 20-CV-698:

SO ORDERED this

__7__ day of ___March_____, 2022

                s/ MKB
_____
HONORABLE MARGO K. BRODIE
Chief United States District Judge, Eastern District of New York

19